UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STYLELINE STUDIOS INTERNATIONAL LIMITED,

                       Plaintiff,

         -against-

JAY LITVACK,

                   Defendant.

: Civil Action No.:
:
:
:
:
:
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Styleline Studios International Limited ("Styleline International" or "Plaintiff"), for its complaint against defendant Jay Litvack ("Litvack"), alleges as follows:

### I.

### NATURE OF THE ACTION

1.    This action arises out of Defendant's brazen counterfeiting and willful infringement of Plaintiff's federally-registered trademark J/SLIDES (the "J/SLIDES Mark").  Defendant has used, and continues to use, a spurious designation identical to or substantially indistinguishable from Plaintiff's federally registered J/SLIDES Mark in connection with the manufacture, distribution, marketing, advertising, promotion, offering for sale and sale of Defendant's footwear.

2.    Defendant is one of three equal members of non-party Styleline Studios LLC ("Styleline New York"), a New York based company that used the J/SLIDES Mark with the consent of Plaintiff in connection with its business. Unfortunately, Defendant has gone "rogue," and without any authority to do so, has taken unilateral actions on behalf of the company that has left the company with crippling debt and unable to continue operating.  As a result of Defendant's actions, the members voted to dissolve the company on February 1, 2024.

3.    Notwithstanding the dissolution of Styleline New York, Defendant continues to act unilaterally on behalf of the company, including by causing it to continue to conduct business using the J/SLIDES Mark, all without authority and in the face of express directions from the company's other two members and from Plaintiff to cease all such activities.

4.    Accordingly, Plaintiff brings this action under Section 32(1) and 43(a) of the Lanham Act, 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a), and New York statutory and common law, for trademark counterfeiting, willful trademark infringement, unfair competition and false designation of origin.  In addition to money damages, Plaintiff seeks a temporary restraining order, and preliminary and permanent injunctions.

5.    The conduct of Defendant has and is continuing to cause harm to Plaintiff in the State of New York and this District.

## II.

## **THE PARTIES**

6.    Plaintiff is a Hong Kong private limited company with its principal place of business at Unit 7F-15, 7/f, Valiant Industrial Centre, 2-12 Au Pui Wan Street, Fo Tan, Shatin, New Territories, Hong Kong S.A.R.

7.    Upon information and belief, defendant Jay Litvack is an individual and a citizen of the United States who resides at 135 Crescent Lane, Roslyn Heights, New York 11577.

## III.

## **JURISDICTION AND VENUE**

8.    This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338(a) and (b) and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3495943v3

9.      This Court has personal jurisdiction over Litvack because he resides in the State of New York.

10.     Venue is proper in this Court because the Defendant is subject to the personal jurisdiction of this Court, resides in this District and a substantial part of the events giving rise to Plaintiff's claims and causing Plaintiff's injuries occurred and continue to occur within this District.

IV.

## FACTS AND CIRCUMSTANCES GIVING RISE TO THE CLAIMS ALLEGED

### A. Plaintiff's Incontestable Trademark J/SLIDES

11.     Plaintiff manufacturers, markets, distributes and sells footwear that is sold in many countries of the world, including the United States.  Plaintiff owns and uses the J/SLIDES Mark on or in connection with footwear (the "Goods") and owns registrations for the mark for the Goods in many countries of the world.

12.     In the United States Plaintiff owns Registration No. 4746857 on the Principal Trademark Register of the United States Patent and Trademark Office ("USPTO") for the J/SLIDES Mark for  the Goods (the "857 Registration").  The application underlying the 857 Registration (the "857 Application") was filed on September 3, 2014 by non-party JSL Studio Int'l ("JSL Studio")  based on a claim of the use of mark in commerce as of September 2012.

13.     The 857 Registration is incontestable.  Pursuant to 15 U.S.C. § 1065, Plaintiff's incontestable registration is conclusive evidence of the validity of the J/SLIDES Mark as well as Plaintiff's ownership and exclusive right to use the mark in commerce on or in connection with the Goods.

3

14.     Plaintiff, its predecessor and/or authorized licensees have used the J/SLIDES Mark in commerce throughout the United States continuously since at least as early as September 2012 on or in connection with the distribution, offering for sale, marketing, advertising and promotion of the Goods.

15.     As a result of it or its authorized licensee's widespread, continuous, and exclusive use of the J/SLIDES Mark to identify Plaintiff's Goods and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the J/SLIDES Mark.

16.     Plaintiff's J/SLIDES Mark is distinctive to both the consuming public and Plaintiff's trade.

17.     The J/SLIDES Mark symbolizes an exceptional level of quality for the Goods and is an asset of incalculable value and an identifier of Plaintiff's Goods.  Defendant's unauthorized counterfeit and infringing uses of the J/SLIDES Mark on or in connection with footwear is causing damage to Plaintiff and its rights to the J/SLIDES Mark.

**B.   Defendant Goes Into Business With Tina Liu and Dimitrios Mavridakis**

18.     Defendant is in the business of importing into, marketing and distributing shoes in the United States.  On information and belief Litvack is the sole member of JSL Studio.

19.     On September 3, 2014 JSL Studio filed the 857 Application.

20.     In or around 2014, Defendant, Liu and Dimitrios Mavridakis ("Mavridakis") decided to work together to manufacture, market, distribute and sell footwear and related accessories in connection with the J/SLIDES Mark with the hope of developing and enhancing the image and reputation of brand and increase its sales.

21.    Liu is a citizen of Taiwan Republic of China and resides in Montreal, Canada.

Mavridakis is a citizen of Canada and resides in Montreal, Canada.  Mavridakis is in the business

of, among other things, designing footwear.

22.    In connection with their venture, Defendant, Liu and Mavridakis took a number of

actions and entered into a series of agreements.  First, the parties formed Plaintiff on January 22,

2015.  Each of Defendant, Liu and Mavridakis own 33.3% of the company.  Liu is the chairwoman

of the board of Plaintiff.

23.    On or about April 2 , 2015, the following agreements were entered into:

    a. Joint Venture and Shareholders' Agreement between Plaintiff, Liu Mavridakis and Litvack (the "JV Agreement") which defines the purpose and operation of the Plaintiff and the obligations of the shareholders in connection with the Plaintiff.

    b. An Intellectual Property Rights Transfer Agreement between JSL Studio, Plaintiff and Litvack ("IP Transfer Agreement") in which for $150,000 Litvak agreed to cause JSL Studio to assign to Plaintiff all right and title to the, the J/SLIDES Mark, the J/SLIDES Application and all other intellectual property rights owned by JSL Studio.

    c. An Asset Purchase Agreement between JSL Studio, Plaintiff and L ("APA") in which for $150,000 Litvack agreed to cause JSL Studio to assign all of JSL Studio's inventory, purchase orders and goodwill in connection with the J/SLIDES Mark to Plaintiff.

    d. Service Agreement between Litvack and Plaintiff ("JL Service Agreement") in which Litvack agreed to provide sales and distribution services in connection with footwear sold in connection with the J/SLIDES Mark in the United States.

    e. Services Agreement between Mavridakis and Plaintiff ("DM Services Agreement") in which Mavridakis agreed to provide footwear design services for footwear bearing or associated with the J/SLIDES Mark.

    f. Supply Agreement between Plaintiff and E-Teen ("E-Teen Supply Agreement") in which Plaintiff appointed E-Teen as a "non-exclusive" manufacturer of footwear bearing or associated with the J/SLIDE Mark.  Even though the E-Teen Supply Agreement is "non-exclusive" the agreement and JV Agreement provide a number of limitations on the Plaintiff's ability to retain any other party to manufacture or supply footwear bearing or associated with

the J/SLIDES Mark. For example, under the E-Teen Supply Agreement, E-Teen has a right of first refusal before Plaintiff may retain any other party to manufacture or supply any footwear bearing or associated with the J/SLIDES Mark. Also, the JV Agreement expressly provides that "a 75% quorate shareholders meeting" is required before Plaintiff may enter into a manufacturing or supply agreement for the production of footwear bearing or associated with the J/SLIDES mark with any party other than E-Teen.

24.     On March 20, 2015 a Trademark Assignment assigning the J/SLIDES Mark and J/SLIDES Application from JSL Studio to Plaintiff was recorded with the USPTO. A copy of the Trademark Assignment and Trademark Assignment Cover Sheet is attached as **Exhibit J** to the Liu Decl.

25.     On or about December 18, 2014, Defendant, Liu and Mavridakis formed Styleline New York to import, distribute, market and sell footwear bearing or associated with J/SLIDES Mark in the United States. The members of Styleline New York are Defendant (33.34%), Liu (33.33%) and Mavridakis (33.33%).

26.     On or about January 12, 2015, Defendant, Liu and Mavridakis entered into an Operating Agreement for Styleline New York (the "Operating Agreement").

27.     The Operating Agreement provides, in relevant part:

[T]he business and affairs of the Company will be managed by the Members." (Section 4.1 A.).

"Unless greater or other authorization is required pursuant to this Agreement or under the New York Limited Liability Law for the Company for the Company to engage in an activity or transaction, **all activities or transactions must be approved by the Members, to constitute the act of the Company or serve to bind the Company. With such approval, the signature of any Members authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so approved. Without such approval, no Member acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to bind the Company.**" (Section 4.1 B.) (emphasis added).

6

28.     Pursuant to the Operating Agreement, no single member was authorized to take any action without the knowledge and consent of the other Members, except for the dissolution of the entity, which could achieved by a vote of the majority of the members.  "The Company will be dissolved upon . . . [t]he vote of the Members holding at least a majority of the Voting Interest of the Company to dissolve the Company . . ." (Section 8.1).

### C. Defendant's Unlawful Actions

29.     The instant dispute arose when Liu and Mavridakis discovered that Defendant was acting beyond his authorization and causing, without the knowledge of Liu and Mavridakis, significant financial and reputational risk to Styleline New York, Liu, Mavridakis and their interests, including their interest in and to the J/SLIDES Mark.

30.     In or around 2018, Liu and Mavridakis discovered that Defendant was acting and making decisions for and binding Styleline New York to numerous obligations without their knowledge or consent.  These actions included, but are not limited to, ordering the manufacturing of footwear and obtaining significant loans.  In doing so, Defendant caused Styleline New York to incur significant debt that it could not pay.

31.     Liu and Mavridakis objected to Defendant's unauthorized actions and negotiated with him to seek to settle their dispute.  In connection therewith, on April 1, 2018, Styleline New York and Plaintiff entered into a Deed (the "2018 Deed") in which Plaintiff agreed to assign the worldwide right, title and interest in and to the J/SLIDE Mark to Styleline New York in exchange for Styleline New York's timely payments of certain amounts owned to Plaintiff pursuant to a payment schedule.

3495943v3

32.     In connection with the 2018 Deed, Plaintiff executed a Trademark Assignment assigning the 857 Registration to Styleline New York.  This Trademark Assignment was recorded with the USPTO on February 12, 2020.

33.     Styleline New York and/or Defendant breached the 2018 Deed by failing to pay the agreed amounts in a timely manner.

34.     On or about August 12, 2022, Liu and Mavridakis became aware that without their knowledge or consent, Litvak caused Styleline New York to obtain a Small Business Administration Loan.  Styleline New York had received a notice of default from Hilldun Corporation, a secured creditor of Styleline New York.

35.     On or about August 12, 2022, Plaintiff advised Defendant and Styleline New York that the 2018 Deed was rescinded and demanded the return of the worldwide right, title and interest in and to the J/SLIDE Mark.

36.     On August 12, 2022 Plaintiff and Styleline New York entered into a second Deed (the "2022 Deed") in which Plaintiff provided Styleline New York until October 31, 2022 to pay it $2,733,800.61.  If Styleline New York breached this obligation, all the worldwide right, title and interest in and to the J/SLIDE Mark, including the 857 Registration, would be assigned back to Plaintiff.

37.     To secure Styleline New York's obligations under the 2022 Deed, a Deed of Assignment assigning, among other rights, the 857 Registration to Plaintiff was placed in escrow.

38.     Styleline New York defaulted under the 2022 Deed. On October 31, 2022, Plaintiff advised the escrow agent, Litvak and Styleline New York, of the default and on November 16, 2022, the escrow agent released the Deed of Assignment to Plaintiff.

39.     The Deed of Assignment was recorded with the USPTO on November 17, 2022.

40.    On or about December 14, 2023, Plaintiff advised Litvak and Styleline New York that it was no longer authorized to use the J/SLIDE Mark on or in connection with footwear in the United States.

41.    Nevertheless, Litvak, who was only a one-third member of Styleline New York continued to cause Styleline New York to use the J/SLIDES Mark in connection with the manufacture, marketing and sale of footwear.

42.    Concerned about Litvak's activities Liu and Mavridakis, pursuant to the terms of the Operating Agreement, properly noticed and then on February 1, 2024 held a special meeting of the members of Styleline New York.  At that meeting a majority of the members of Styleline New York voted to dissolve Styleline New York.

43.    In January and February 2024, counsel for Plaintiff sent demand letters to a number of third parties acting on instructions from Litvak in connection with the counterfeit goods being offered by Litvak.  These included letters to a manufacture in China and Hong Kong and the operators of trade shows in the Unites States. In the letters counsel for Plaintiff advised such third-party's of Plaintiff's exclusive rights to the J/SLIDE Mark, that Litvak and/or Styleline New York had no rights to and is not authorized to use the J/SLIDE Mark and that they should not continue to contribute to Defendant's infringing activity.  All have ignored or chosen not to take an action in connection with Defendant's infringing activities.

44.    Defendant has no legitimate reason or good faith basis to continue to use the J/SLIDES Mark on or in connection with footwear and its use of the mark is intended to trade off of and profit from the goodwill and reputation of Plaintiff and its J/SLIDES Mark.  Defendant's actions is causing consumer confusion and immediate, continuing and irreparable harm to Plaintiff.

45.     Defendant's conduct has and continues to cause damage and irreparable injury to Plaintiff and to its goodwill and business reputation.   As a direct and proximate result of Defendant's counterfeiting and infringing use of the J/SLIDES Mark, Plaintiff has suffered immediate and irreparable harm, and will continue to suffer such harm, unless Defendant is temporarily restrained and preliminary and permanently enjoined by the Court.

## COUNT ONE

### (Counterfeiting and Trademark Infringement
### (15 U.S.C. § 1114(1))

46.     Plaintiff repeats and realleges paragraphs 1 through 45 hereof, as if fully set forth herein.

47.     Defendant's unauthorized use in commerce of a spurious designation that is identical to or substantially indistinguishable from Plaintiff's J/SLIDES Mark, on and in connection with footwear as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of the Defendant's footwear, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff. Defendant's conduct therefore constitutes counterfeiting and trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

48.     Upon information and belief, Defendant has committed the foregoing acts of counterfeiting and infringement with full knowledge of Plaintiff's prior rights in and to the J/SLIDES Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

49.     Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

50.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, statutory damages, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest

## COUNT TWO

### (Federal Unfair Competition
### (15 U.S.C. § 1125(a))

51.     Plaintiff repeats and realleges paragraphs 1 through 50 hereof, as if fully set forth herein.

52.     Defendant's unauthorized use in commerce of a spurious designations that is identical to or substantially indistinguishable from Plaintiff's J/SLIDES Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

53.     Defendant's unauthorized use in commerce of a spurious designations that is identical to or substantially indistinguishable from Plaintiff's J/SLIDES Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

54.     Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

55.     Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

3495943v3

56.     Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

57.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest

## COUNT THREE

### (Counterfeiting and Trademark Infringement
### Under New York Common Law)

58.     Plaintiff repeats and realleges paragraphs 1 through 57 hereof, as if fully set forth herein.

59.     Defendant's conduct constitutes trademark infringement in violation of New York common law.

60.     By the acts described above, Defendant has engaged in counterfeiting and trademark infringement in violation of the common law of the State of New York.

61.     Defendant's acts have caused and will continue to cause, unless restrained by this Court, serious, immediate and continuing irreparable injury to Plaintiff, for which Plaintiff has no remedy at law.

## COUNT FOUR

### (Unfair Competition Under New York Common Law)

62.     Plaintiff repeats and realleges paragraphs 1 through 61 hereof, as if fully set forth herein.

3495943v3

63.     Defendant's conduct constitutes unfair competition in violation of New York common law.

64.     By the acts described above, Defendant has intentionally engaged in unfair competition in violation of the common law of the State of New York.

65.     Defendant's acts have caused and will continue to cause, unless restrained by this Court, serious, immediate and continuing irreparable injury to Plaintiff, for which Plaintiff has no remedy at law.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1.     monetary damages in an amount to be determined at trial caused by Defendant's violation of Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a), , together with interest thereon at the highest rate allowed by law;

2.     monetary damages in an amount to be determined at trial caused by Defendant's trademark infringement and unfair competition in violation of New York common law, together with interest thereon at the highest rate allowed by law;

3.     temporarily, preliminarily and permanently enjoining and restraining Defendant and those in active concert with him and entities who receive actual notice of the Court's order by personal service, email or otherwise from:

   a. manufacturing, importing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise or promote footwear or any other goods bearing, displaying, or using the Plaintiff's J/SLIDES Mark

or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's J/SLIDES Mark;

b. manufacturing, importing distributing, displaying, marketing, advertising, promoting, selling, or using any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that bear, display, or use Plaintiff's J/SLIDES Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's J/SLIDES Mark;

c. engaging in any activity that infringes Plaintiff's rights in its J/SLIDES Mark;

d. engaging in any activity constituting unfair competition with Plaintiff;

e. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

f. using or authorizing any third party to use in connection with any business or good any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business or good with Plaintiff or tend to do so;

g. registering or applying to register any trademark service mark, domain name (regardless of ccTLD or gTLD), trade name, or other source identifier or symbol of origin consisting of or incorporating the J/SLIDES Mark or any other mark that

14

infringes or is likely to be confused with Plaintiff's J/SLIDES Mark or any goods or services of Plaintiff, or Plaintiff as their source;

h.  in connection with any sponsored advertising on the internet, purchasing the trademark J/SLIDES or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's trademark J/SLIDES, or using any of these marks in any source code or otherwise using the marks in such a way that a search for Plaintiff or the J/SLIDES Mark on the internet will cause any domain name or website of Defendant to appear in search results;

i.  secreting, destroying, deleting, altering, or removing any books, records, or documents (electronic or otherwise) that contain any information relating to the manufacturing, importing, distributing, marketing, promoting, offering for sale, or selling of footwear or any other products that bear, contain, display or use Plaintiff's J/SLIDES Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's J/SLIDES Mark; and

j.  aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (j).

4.  Granting such other and further relief as the Court may deem just and proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods or services.

5.     Ordering Defendant to direct all manufacturers, importers, distributors, retailers, wholesalers, trade show operators and other persons and entities that distribute, advertise, promote, sell, offer for sale or permit Defendant or any other party to advertise, promote or offer for sale the Defendant's counterfeit footwear to cease forthwith the manufacture, distribution, marketing, advertising, promotion, sale, and/or offering for sale of the Defendant's counterfeit footwear and any and all goods, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that bear, contain, or display the J/SLIDES Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's J/SLIDES Mark, and to immediately remove them from public access and view.

6.     In accordance with Section 36 of the Lanham Act, 15 U.S.C. § 1118, directing that Defendant, at its own expense, recall and deliver up to Plaintiff's counsel for destruction all counterfeit goods and any and all other goods, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that bear, contain, or display the J/SLIDES Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's J/SLIDES Mark, that are in Defendant's possession, custody, or control and all means of making the same.

7.     Ordering Defendant to permanently delete and remove from all online auctions, online marketplaces, search engines, blogs, social media, or websites on or through which Defendant has advertised or sold the counterfeit goods or that are within Defendant's control, all listings for or references to any counterfeit goods, or any other products that bear, contain, or display Plaintiff's J/SLIDES Mark or any other mark that is a counterfeit copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's J/SLIDES Mark.

16

8.      Ordering Defendant's to make all books, records, including electronic records, and other documents concerning the manufacture, distribution, importation, advertisement, or sale of the counterfeit goods available to Plaintiff for review, and supply Plaintiff with a complete list of entities and persons from which Defendant purchased and to which Defendant distributed and/or sold the counterfeit goods or any other products confusingly similar to Plaintiff's products or that otherwise bear, contain, or display Plaintiff's J/SLIDES Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's J/SLIDES Mark.

9.      Pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), directing Defendant to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied therewith.

10.     Awarding Plaintiff three times Defendant's profits attributable to the conduct complained of herein or three times Plaintiff's damages arising out of Defendant's wrongful acts, whichever is greater, pursuant to Sections 35(a) and 35(b) of the Lanham Act (15 U.S.C. §§ 1117(a), (b)).

11.     Awarding Plaintiff, at Plaintiff's election, statutory damages of $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

12.     Declaring this to be an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

3495943v3

13.    Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

14.    Awarding such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable in this action.

Dated:    February 15, 2024

Respectfully submitted,

Alexander Widell
Michael Schwab
Moritt Hock & Hamroff LLP
400 Garden City Plaza
Garden City, New York 11530
Telephone:  (212) 239-2000
Awidel@moritthock.com
Mschwab@moritthock.com

18