UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STYLELINE STUDIOS INTERNATIONAL
LIMITED,

                        Plaintiff,

         v.

JAY LITVACK,

                        Defendant.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
2:24-CV-1192 (OEM)(JMW)

**ORELIA E. MERCHANT, United States District Judge:**

    Plaintiff Styleline Studios International Limited ("Styleline" or "Plaintiff") filed a complaint against defendant Jay Litvack ("Litvack") on February 15, 2024. Complaint ("Compl."), ECF 1. Styleline brings claims for counterfeiting and trademark infringement and unfair competition against Litvack. *Id.* at 10-13. Before the Court is Styleline's motion for a preliminary injunction, filed on February 15, 2024. Memorandum of Law in Support of Styleline's Motion for Preliminary Injunction ("Styleline MOL"), ECF 5-1. For the reasons that follow, Styleline's motion for a preliminary injunction, as narrowed by Styleline at the Court's February 29, 2024, show cause hearing, is **GRANTED**.

## BACKGROUND[1]

    Styleline is a Hong Kong private limited company engaged in the manufacture and sale of footwear. *See* Compl. at 2-3. Styleline owns and uses a federally registered trademark for J/SLIDES (the "J/SLIDES Mark") in connection with the manufacture and sale of Styleline's footwear. *Id.* at 1. Litvack was one of three equal members, along with Tina Liu ("Liu") and

---

[1] The following background is taken from Styleline's complaint, and other submissions made in connection with the instant motion and are taken as true for the purposes of this motion only.

1

Dimitros Mavridakis ("Mavridakis") of the now-dissolved company Styleline Studios LLC ("Styleline NY"), a New York-based company that used the J/SLIDES Mark with the consent of Styleline.  *Id*. at 1, 4.

Styleline alleges that between 2018 and 2022, Liu and Mavridakis became aware of several unauthorized actions taken by Litvack on behalf of Styleline NY.  *Id*. at 7-8.  On August 12, 2022, Styleline and Styleline NY—then the owner of the J/SLIDES Mark—entered into a deed in which Styleline NY would assign to Styleline the J/SLIDES Mark if it breached an agreement to pay Styleline $2,733,800.61.  *Id*. at 8.  On November 16, 2022, after Styleline NY allegedly breached this agreement, the J/SLIDES Mark was assigned to Styleline.  *Id*.  The accompanying deed of assignment was recorded with the United States Patent Office on November 17, 2022.  *Id*.

Styleline alleges that Litvack continued to cause Styleline NY to use the J/SLIDES Mark after the assignment was effectuated.  *Id*. at 9.  Styleline NY was dissolved at a special meeting of the members of Styleline NY on February 1, 2024.  *Id*.  Styleline alleges that Litvack continues to trade in "counterfeit goods" bearing the J/SLIDES Mark.  *Id*.

In a declaration made in support of Styleline's motion for a preliminary injunction, Liu alleges that Styleline sent a cease and desist letter to Litvack on December 14, 2023.  Declaration of Tina Liu ("Liu Decl."), ECF 5 at 7.  Liu alleges that Litvack did not respond and continued to "use the J/SLIDE Mark on or in connection with footwear, all without [Styleline's] authorization."  *Id*.

In a declaration made in opposition to Styleline's motion for a preliminary injunction, Litvack asserted that Styleline NY purchased its inventory of J/SLIDES branded goods largely from Styleline itself, and "occasionally" purchased from "directly authorized J/SLIDES manufacturers," including an October 2023 order of 3,938 pairs of J/SLIDES branded shoes "from

2

a manufacturer that was expressly authorized by [Styleline] to sell such goods to [Styleline NY]." Declaration of Jay Litvack ("Litvack Decl."), ECF 16 at 2-3.

In a declaration in support of Styleline's motion for a preliminary injunction, Mavridakis asserted that "an attorney who purported to represent defendant sent my attorney a document that listed 'open orders' – i.e., orders by customers that have not yet been shipped. […] I reviewed the 'open orders' document and identified over 200 orders of counterfeit good." Declaration of Dimitri Mavridakis ("Mavridakis Decl."), ECF 17 at 3; *Id*. at Ex. H.  Mavridakis further contended that Styleline NY, under direction from Litvack, "recently caused the LLC to sell counterfeit goods at a trade show in Las Vegas, Nevada from February 13-15, 2024," of which neither Mavridakis or Liu "were responsible for the product design and manufacturing and have never seen those styles before." *Id*. at 3.  In an email attached to Mavridakis' declaration, an attorney represented that the "open orders" document referenced by Mavridakis reflected "purchase orders that need to be fulfilled.  Most of the goods are already in inventory and the balance in transit." *Id*. at Ex. H. A series of photographs attached as an exhibit to Mavridakis' declaration show a collection of footwear on tables in front of a J/SLIDES banner with certain footwear styles circled as purportedly counterfeit. *Id*. at Ex. I.

## PROCEDURAL HISTORY

On February 16, 2024, the Court granted Styleline's motion for a temporary restraining order and ordered Litvack to show cause why a preliminary injunction should not be entered. February 16, 2024, Temporary Restraining Order ("TRO"), ECF 8.  Following the entry of the TRO, the parties appeared before the Court for a show cause hearing on February 29, 2024, and agreed to a modified temporary restraining order that has, on the consent of the parties, remained in effect during the pendency of Styleline's preliminary injunction motion.  *See* February 29, 2024,

Minute Entry; February 29, 2024, TRO, ECF 18. At the hearing, Styleline substantially narrowed its request to the Court, asking that the Court enjoin Litvack from the manufacture or sale of counterfeit and unapproved J/SLIDES branded merchandise.

At the show cause hearing, Styleline conceded that Litvack was in possession of an unknown number of legitimate J/SLIDES branded goods, the manufacture of which had been approved by Styleline and which Styleline consented to be sold. Styleline asserted, however, that there were approximately 200 orders of J/SLIDES branded goods that Litvack had manufactured without the consent of Styleline, which Styleline contended were housed in a warehouse in Long Island, New York, citing to a list of purchase orders that it contended represented Litvack's inventory.

At the hearing, Litvack contended that his stock of J/SLIDES goods was entirely legitimate, and that the purchase orders cited by Styleline went unfulfilled. Litvack asserted that he had asked Styleline to fulfil the referenced purchase orders and was rejected, meaning no actual inventory was manufactured or sold related to those orders. Styleline argued in response that it had received an email from Litvack's counsel, which was not yet in the record and would be provided to the Court, representing that the referenced purchase orders reflected actual inventory. Styleline has not yet provided any supplemental materials to the Court.

## STANDARD OF REVIEW

"A party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or ... sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an

4

injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Capstone Logistics Holdings, Inc. v. Navarrete*, 736 F. App'x 25, 26 (2d Cir. 2018).

## DISCUSSION

**A. Likelihood of Success on the Merits** [2]

The Court considers Styleline's state and federal unfair competition and trademark violation claims together, as the analysis does not diverge for these claims. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir. 2006) ("We analyze claims under New York's unfair competition statute in a similar fashion to how we analyze claims under the Lanham Act."); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 157 (E.D.N.Y. 2016) ("To establish a claim for common law unfair competition, 'the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent.'") (cleaned up).

"A claim of trademark infringement, whether brought under 15 U.S.C. § 1114(1) (for infringement of a registered mark) or 15 U.S.C. § 1125(a) (for infringement of rights in a mark acquired by use), is analyzed under the familiar two-prong test described in *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072 (2d Cir.1993). The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

---

[2] The Second Circuit's preliminary injunction standard allows a movant to demonstrate "*either* [1] 'a likelihood of success on the merits,' *or* [2] 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly' in the movant's favor.'" *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018) (quoting *Jackson Dairy v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)) (italics added).

1. **Styleline's J/SLIDES Mark is Entitled to Protection**

Styleline's federal registration of the J/SLIDES Mark Registration "serves as 'constructive notice of the registrant's claim of ownership' of the mark," [and] "is 'prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate.'" *Matal v. Tam*, 582 U.S. 218, 226–27 (2017).  Accordingly, the Court finds that Styleline has adequately alleged that its mark is entitled to protection.

2. **Likelihood of Confusion from Litvack's Use of the J/SLIDES Mark**

"Plaintiff may establish […] likelihood of confusion […] through the eight factors set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961): the strength of plaintiff's mark, the degree of similarity between the two marks, the proximity of the parties' areas of commerce, the likelihood that plaintiff will bridge the gap separating their areas of activity, actual consumer confusion, whether defendant acted in bad faith or was otherwise reprehensible in adopting the mark, the quality of defendant's product, and the sophistication of the relevant consumer group.  However, where counterfeit items are involved, the court 'need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion.'" *Kelly Toys Holdings, LLC v. Airpods Pro Store*, 21-CV-8435 (LJL), 2022 WL 2801077, at *4 (S.D.N.Y. July 18, 2022).

The primary dispute between the parties concerns whether Litvack has ever sold or attempted to sell counterfeit J/SLIDES-branded goods.  Litvack contends that "Plaintiff has failed to offer any evidence that Defendant has ever sold or caused [Styleline NY] (or anyone else) to sell even a single non-genuine item of J/SLIDES branded merchandise."  Litvack's Memorandum

6

of Law in Opposition to Styleline's Motion for Preliminary Injunction ("Opp."), ECF 14 at 8. Litvack contends that his sale of J/SLIDES goods is protected under the "first sale doctrine," which "recognizes the 'the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product.'" *Id*. at 6 (quoting *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 222 (S.D.N.Y. 2011). Litvack contends that Styleline has failed to adequately allege that he sold anything other than J/SLIDES goods sold to him by Styleline and its explicitly authorized manufacturers. Opp. at 7-8.

The Court finds that Styleline has adequately alleged that Litvack has sold or attempted to sell counterfeit and unauthorized J/SLIDES-branded goods. In his declaration in support of Styleline's motion for preliminary injunction, Mavridakis declared that Litvack "recently caused the LLC to sell counterfeit goods at a trade show in Las Vegas, Nevada from February 13-15, 2024," of which neither Mavridakis or Liu "were responsible for the product design and manufacturing and have never seen those styles before." Mavridakis Decl. at 3. In support of this allegation, Mavridakis attached a series of photographs with purportedly counterfeit goods—those that neither Mavridakis or Liu recognized as approved or valid J/SLIDES styles—sitting at a table at a trade show beneath a banner bearing J/SLIDES branding. *Id*. at Ex. I. The Court finds this to be sufficient evidence to establish Styleline's likelihood of success in establishing that Litvack has sold or attempted to sell non-genuine goods using the J/SLIDES Mark.

**3. Irreparable Harm**

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Allstate Ins. Co. v. Elzanaty*, 929 F.

7

Supp. 2d 199, 221 (E.D.N.Y. 2013) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)) (cleaned up).

"Under the Trademark Modernization Act of 2020, 'a plaintiff seeking a preliminary injunction is entitled to a rebuttable presumption of irreparable harm upon a court's finding a likelihood of success on the merits.' 'Thus, if (1) the plaintiff establishes that it has a likelihood of success on the merits (that is, it establishes both the validity of its mark and a likelihood of confusion), and (2) the defendant fails to rebut the presumption, the plaintiff satisfies its burden of showing irreparable harm.'" *Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc.*, 581 F. Supp. 3d 460, 469 (E.D.N.Y. 2021).

Here, the Court finds that Litvack has failed to rebut the presumption of irreparable harm that results from the Court's finding that Styleline has established a likelihood of success on the merits. Litvack argues that because "Hilldun has commenced a lawsuit to recover $5.6 million owed under the Factoring Agreement and the person guarantees and to take possession of the collateral securing that debt, including the J/SLIDES trademark," "it is highly likely Hilldun and not Plaintiff will soon be the owner of the J/SLIDES trademark." Opp. at 9-10. Styleline contends in response that "because Styleline Studios did not own the J/SLIDES Mark at the time it was pledged to Hilldun, any claim Hilldun may make to the mark is specious. The transfer to the J/SLIDES Mark from Plaintiff to Styleline Studios in 2018 was expressly conditioned on the payment of money to Plaintiff. Styleline Studios never fulfilled this obligation and, therefore the assignment was not completed." Reply Memorandum of Law in Support of Styleline's Motion for Preliminary Injunction ("Styleline Reply"), ECF 17-10 at 5.

In essence, Litvack asks the Court to hold that Hilldun's lawsuit is so likely to result in its acquisition of the J/SLIDES Mark that the rebuttable presumption of irreparable harm created by

Styleline's likelihood of success on the merits in this action is overridden. Based on the incomplete record before the Court, the Court makes no such finding. Accordingly, the Court finds that Litvack has failed to rebut the presumption of irreparable harm in this action and finds that Styleline has adequately established irreparable harm.

### 4. The Balance of Equities and the Public Interest

Lastly, the Court considers the balance of the equities and the potential effects on the "public interest" of granting the injunction. *See E.E.O.C. v. KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012) ("'The factors . . . [that] are pertinent in assessing the propriety of injunctive relief' are 'the balance of equities and consideration of the public interest'") (quoting *Winter*, 555 U.S. at 32).

Litvack contends that he would suffer irreparable harm from the issuance of an injunction because "[t]he issuance of a preliminary injunction would destroy Defendant's business, which he has spent a decade building, and his reputation, which he has spent a lifetime building." Opp. at 11. However, the Court finds that the burden imposed on Litvack by a preliminary injunction has been dramatically lessened by Styleline's voluntary narrowing of its requested injunction to cover only counterfeit goods. The issuance of this narrower injunction would not hinder Litvack's ability to continue to sell legitimately acquired J/SLIDES merchandise, and thus poses a substantially lessened impact on Litvack's business. In contrast, the reputational cost to Styleline that could result from the sale of counterfeit J/SLIDES merchandise is comparatively large. Furthermore, the Court finds that the interest of the public in avoiding the sale of counterfeit goods weighs in favor of the issuance of a preliminary injunction.

### 5. Security is Not Required

Lastly, Rule 65(c) of the Federal Rules of Civil Procedure provides that that "the court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court is "is vested with wide discretion in the matter of security." *Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 505 (E.D.N.Y. 2021) (quoting *Doc.'s Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)). Here, because the preliminary injunction granted by the Court is strictly limited to the sale of counterfeit J/SLIDES goods—which Litvack was not legally permitted to sell anyway—the Court finds that "a[n injunction] is unlikely to prejudice [Litvack]," and therefore "the Court declines to require [Styleline] to post a bond." *Id.*

## CONCLUSION

For the foregoing reasons, the Court grants Styleline's motion for a preliminary injunction as narrowed by Styleline at the February 29, 2024, show cause hearing. A preliminary injunction is issued as follows:

Defendant Jay Litvack ("Litvack") and his agents, servants, employees, attorneys, successors, assigns and all other persons in concert and participation with them (collectively, the "Restrained Parties"), shall be immediately restrained during the pendency of this action from:

1. Manufacturing, importing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise or promote footwear or any other goods bearing, displaying, or using the Plaintiff's J/SLIDES Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's J/SLIDES Mark;

2. Manufacturing, importing, distributing, displaying, marketing, advertising, promoting, selling, or using any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that bear, display, or use Plaintiff's J/SLIDES Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's J/SLIDES Mark;

3. Engaging in any activity that infringes Plaintiff's rights in its J/SLIDES Mark;

4. Engaging in any activity constituting unfair competition with Plaintiff;

5. Making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) counterfeit J/SLIDES goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff;

6. Using or authorizing any third party to use in connection with any business or good any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business or good with Plaintiff or tend to do so;

7. Registering or applying to register any trademark service mark, domain name (regardless of ccTLD or gTLD), trade name, or other source identifier or symbol of origin, consisting of or incorporating the Plaintiff's J/SLIDES Mark or any other mark that infringes or is likely to be confused with Plaintiff's J/SLIDES Mark or any goods or services of Plaintiff, or Plaintiff as their source;

8. In connection with any sponsored advertising on the internet, purchasing the trademark Plaintiff's J/SLIDES Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's trademark J/SLIDES, or

using any of these marks in any source code or otherwise using the marks in such a way that a search for Plaintiff or the J/SLIDES Mark on the Internet will cause any domain name or website of Defendant to appear in search results;

9. Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (1) through (8).

ORDERED that the preliminary injunction as set forth in subparagraphs (1) through (9) above shall not apply to (A) any J/SLIDES merchandise bearing or sold in connection with the J/SLIDES mark that Styleline Studios, LLC purchased from Plaintiff; and (B) the J/SLIDES merchandise referenced in Paragraph 10 of the declaration of Jay Litvack dated February 28, 2024.

Plaintiff is directed to serve a copy of this Order on Litvack on or before August 19, 2024, and file proof of service of the same.

**SO ORDERED**.

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated: August 16, 2024
Brooklyn, New York