UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STYLELINE STUDIOS INTERNATIONAL
LIMITED,

                        Plaintiff,

                  -against-

JAY LITVACK,

                        Defendant.

------------------------------------------------------------X

**REPORT AND**
**<u>RECOMMENDATION</u>**

24-cv-01192 (OEM) (JMW)

**A P P E A R A N C E S:**

    Kelly Dana Schneid, Esq.
    Michael Schwab, Esq.
    Alexander D. Widell, Esq.
    **Moritt Hock & Hamroff LLP**
    400 Garden City Plaza
    Garden City, NY 11530
    *Attorney for Plaintiff and Counter-Defendant Styleline Studios International Limited*

    Paul Scott Hugel, Esq.
    **Clayman & Rosenberg**
    305 Madison Avenue, Suite 1301
    New York, NY 10165
    *Attorney for Defendant and Counter-Claimant Jay Litvack*

    Peter Scoolidge, Esq.
    **Scoolidge Peters Russotti & Fox, LLP**
    2 Park Avenue
    Ste 20th Floor
    New York, NY 10016
    *Attorney for Defendant and Counter-Claimant Jay Litvack*

William M. Moran, Esq.
Andrew S. Halpern, Esq.
**Otterbourg P.C.**
230 Park Ave.
New York, NY 10169
*Attorney for Proposed Intervenor Hilldun Corporation*

Erik B Derr, Esq.
**Becker LLC**
354 Eisenhower Parkway
Eisenhower Plaza Two, Ste 1500
Livingston, NJ 07039
*Attorney for Counter-Defendants Tiny Ey Vean Liu and Dimitrios Mavridakis*

**WICKS,** Magistrate Judge:

Plaintiff Styleline Studios International Limited commenced this action on February 15, 2024 asserting claims of (1) counterfeiting and trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1114(1); (2) federal unfair competition pursuant to 15 U.S.C. § 1125(a); (3) counterfeiting and trademark infringement under New York common law; and (4) unfair competition under New York common law against Defendant Litvack for allegedly counterfeiting and willfully infringing upon Plaintiff's federally registered trademark "J/SLIDES" ("J/SLIDES Mark" or "the Mark"). (*See generally* ECF No. 1.) In turn, Defendant Litvack has asserted counterclaims against Plaintiff, Liu, and Mavridakis for defamation in light of several false statements allegedly made to persons or entities with whom he does business which resulted in tarnishing his reputation. (ECF No. 29.)

After a flurry of activity at the nascent stage of this case, a proposed intervenor has surfaced. The crux of the dispute is over who, between Hilldun Corporation ("Hilldun") and Plaintiff, has an interest in the J/SLIDES Trademark and proceeds therefrom. Before the Court on referral from the Hon. Orelia E. Merchant (Electronic Order dated Aug. 2, 2024), is proposed intervenor-defendant and counterclaim-plaintiff Hilldun's Motion to Intervene and Motion for

Preliminary Injunction.  (ECF No. 46.)  Plaintiff opposes Hilldun's motion.  (ECF No. 51.)  For the reasons stated below, the undersigned respectfully recommend that both the motion to intervene and for a preliminary injunction be denied.

## BACKGROUND

### The Parties

Plaintiff Styleline Studios International Limited, a private limited company located in Hong Kong, China, owns Styleline Studios LLC ("Styleline New York").  (ECF No. 1 ¶ 6.) Plaintiff makes, markets, distributes, and sells footwear sold in the United States.  (*Id.* ¶ 11.)  It owns the J/SLIDES trademark on its footwear as well as the registrations for the J/SLIDES Mark under No. 4746857 ("Trademark 857").  (*Id.*)  The application for the trademark was filed on September 3, 2014 which demonstrates Plaintiff's "ownership and exclusive right to use the J/SLIDES Mark in commerce" or with the footwear.  (*Id.* ¶¶ 12-13.)  The J/SLIDES Mark has been used by Plaintiff as early as September 2012 on its footwear.  (*Id.* ¶ 14.) Styleline New York was formed in December 2014 and was responsible for marketing and selling footwear with the federally registered J/SLIDES trademark[1] which Plaintiff owned and was federally registered.  (ECF No. 1 ¶¶ 11, 25.)  Styleline New York was formed by Defendant Litvack, Tina Ey-Vean Liu, and Dimitri Mavridakis.  (*Id.* ¶ 25.)

---

 

[1] (ECF No. 5 at 27-28.)

Defendant Litvack marketed and distributed shoes in the United States.  (ECF No. 1 ¶ 18.)  He is the sole member of an entity called JSL Studio.  (*Id.*)  Litvack worked with Liu and Mavridakis to make, market, distribute and sell footwear and accessories bearing the J/SLIDES Mark.  (*Id.* ¶ 20.)  Plaintiff alleges that Litvack operated on behalf of Styleline New York using the J/SLIDES Mark.  Defendant's unauthorized usage of the Mark on the company's behalf has caused the company "crippling" financial and reputational harm by "ordering the manufacturing of footwear and obtaining significant loans."  (ECF No. 1 ¶¶ 2, 30.)

Nonparty Hilldun is a factor and asset-based lender and secured creditor of Styleline New York since January 2016.[2]  (ECF No. 1 ¶ 34.)  He seeks now to intervene and for relief in the form of a preliminary injunction.

***Agreements Entered into by Litvack, Liu, and Mavridakis***

Defendant Litvack, Liu and Mavridakis formed Plaintiff on January 22, 2015, each owning 33.3% of the company.  (ECF No. 1 ¶ 22.)  In April 2015, the three individuals entered into several agreements, one of which "cause[d] JSL Studio to assign to Plaintiff all right[s] and title" to the J/SLIDES Mark.  (*Id.* ¶ 23.)  That same year, a Trademark Assignment assigning the

---

[2] According to Hilldun,

> Factoring is a type of financing in which a borrower, or "factored client," sells receivables (generally represented by invoices) to a type of lender called a "factor"; the factor advances funds to the factored client before the receivables are paid; and the factored client's customers make payment to the factor instead of to the factored client on the receivables sold to the factor. Asset-based lending is a form of financing in which a lender makes loans to a borrower against certain assets of the borrower such as inventory, receivables, purchase orders, intellectual property and/or securities. In both factoring and asset-based lending, the factor or lender generally receives a security interest in some or all of its client's or its borrower's assets. In both types of financing, the factor or asset-based lender may also rely upon personal guaranties to support the advances or loans it makes.

(ECF No. 50 at 14-15.)

J/SLIDES Mark from JSL Studios to Plaintiff was recorded with the U.S. Patent and Trademark Office ("USPTO").  (*Id.* ¶ 24.)

***Styleline New York's Operating Agreement and Defendant Litvack's Misconduct***

Upon formation, Defendant Litvack, Liu and Mavridakis entered into an Operating Agreement for Styleline New York on January 12, 2015 which stated, in relevant part, that: "[A]ll activities or transactions must be approved by the Members, to constitute the act of the Company or to serve to bind the Company…Without such approval, no Member acting alone may bind the Company to any agreement with or obligation to any third party or represent or claim to have the ability to bind the Company."  (ECF No. 1 ¶ 27) (citing Operating Agreement § 4.1 B); (ECF No. 47-5) (Styleline New York Operating Agreement).

Liu and Mavridakis soon realized that Defendant Litvack "was acting beyond his authorization" and causing "significant financial and reputational risk to Styleline New York, Liu, Mavridakis, and their interests, including their interest in and to the J/SLIDES Mark."  (ECF No. 1 ¶ 29.)  Namely, in 2018, they discovered that Litvack was making, what he thought, were binding decisions upon Styleline New York without their knowledge or consent, which included "ordering the manufacturing of footwear and obtaining significant loans."[3]  (*Id.* ¶ 30.)

Liu and Mavridakis confronted Defendant about his actions and on April 1, 2018, and subsequently entered into an agreement ("2018 Deed") in which "Plaintiff agreed to assign the worldwide right, title and interest in and to the J/SLIDES Mark to Styleline New York in exchange for Styleline New York's timely payments" of the monies owed to Plaintiff.  (ECF No.

---

[3] In August 2022, Liu and Mavridakis also learned that Litvack obtained a Small Business Administration ("SBA") Loan for Styleline New York without their knowledge or consent.  (ECF No. 1 ¶ 34.)  Further, Styleline New York defaulted on its agreement with secured creditor, Hilldun.  (*Id.*)  This is particularly relevant because the SBA later agreed to subordinate its interest in Styleline New York's non-real estate business assets in favor of Hilldun.  (ECF No. 50 at 27.)

1 ¶ 31.) A Trademark Assignment for Trademark 857 was assigned to Styleline New York and recorded on February 12, 2020. (*Id.* ¶ 32.) However, Styleline New York or Litvack failed to pay. (*Id.* ¶ 33.) Plaintiff informed Styleline New York and Defendant that the 2018 Deed was rescinded and demanded return of the J/SLIDES Mark. (*Id.* ¶ 35.) Plaintiff and Styleline New York then entered into a *second* agreement ("2022 Deed") which gave Styleline New York until October 31, 2022 to pay off the $2,733,800.61 that it owed Plaintiff and warned the entity that if it breached the 2022 Deed, Trademark 857 would be reassigned to Plaintiff.[4] (*Id.* ¶ 36.)

In an effort to secure Styleline New York's 2022 Deed obligations, a "Deed of Assignment" assigning Trademark 857 to Plaintiff was placed in escrow. (ECF No. 1 ¶ 37.) Nevertheless, Styleline New York defaulted again, and the Deed of Assignment was released to Plaintiff on November 16, 2022 and recorded with the USPTO on November 17, 2022. (*Id.* ¶¶ 38-39.) In December 2023, Litvack was advised that he could no longer use the J/SLIDES Mark on footwear in the United States. (*Id.* ¶ 40.) Notwithstanding Plaintiff's instruction, Litvack continued to use the J/SLIDES Mark. (ECF No. 1 ¶ 41.) Liu and Mavridakis called a meeting on February 1, 2024 and voted to dissolve Styleline New York pursuant to the Operating Agreement's terms. (*Id.* ¶ 42.)

***The Factoring Agreement Between Hilldun and Styleline New York***

In mid-2015, Litvack claims that Liu, Mavridakis and Litvack signed a resolution[5] authorizing Litvack to enter into a factoring agreement with Hilldun, which was to provide

---

[4] Hilldun claims that the 2022 Deed may be invalid given that Liu signed it without an executed resolution. (ECF No. 50 at 29.)

[5] The resolution states in relevant part:

> The Managers of this limited liability company, or any of them, be and they hereby are authorized and directed to execute, from time to time, on behalf of this limited liability company, any agreement with regard to the assignment of accounts receivable with Hilldun …, relating to the

funding for Styleline New York's operations ("Factoring Agreement").  (ECF No. 29 ¶ 85); (ECF No. 47-2) (executed Factoring Agreement); (ECF No. 47-3) (executed resolution). Repayment to Hilldun was secured by Styleline New York's assets, which included "current and future inventory, receivables and general intangibles."  (ECF No. 29 ¶ 85); (ECF No. 47-2 ¶ 9(a).)  The three members also signed personal guarantees to secure the debt owed to Hilldun. (ECF No. 29 ¶ 86.)

The Factoring Agreement did not take effect until January 29, 2016.  (ECF No. 50 at 16.) Hilldun asserts that under the Factoring Agreement Styleline New York sold to Hilldun *all* of its receivables, which included the J/SLIDES Mark and proceeds therefrom.[6]  (*Id.* at 17.)  Hilldun perfected its security interest in all assets belonging to Styleline New York by (1) filing a Form UCC-1 Financing Statement with the New York State Department of State in January 29, 2016; and (2) re-perfecting its security interest by filing yet another UCC-1 statement on April 27, 2021.  (*Id.* at 27.)  Hilldun acknowledges the Styleline New York and Plaintiff 2018 Deed but alleges Hilldun's perfected security interest and lien attached on April 1, 2018 and again in April 2021 for the J/SLIDES Mark.  (*Id.* at 28.)  Hilldun claims that Plaintiff had actual notice of Hilldun's interest in the Mark at the time the Factoring Agreement and 2022 Deed went into effect.  (*Id.* at 29-30.)

---

sale, pledge, assignment, negotiation, and guaranty of all contract rights, accounts, general intangibles, bills, notes, acceptances, any other forms of obligations (hereinafter collectively called "receivables"), and any other collateral to or with Hilldun and [from] time to time to extend, renew, renegotiate, amend, supplement, or otherwise modify any such agreement or agreements, and … are hereby further authorized and directed from time to time to sell, assign, transfer, deliver, endorse, negotiate, grant any lien rights with regard to, and grant any security title to and security interest in, and guarantee to Hilldun or its assigns any and all receivables now or hereafter belonging to or acquired by this limited liability company …

(ECF No. 47-3.)

[6] Hilldun alleges that the Factoring Agreement granted Hilldun a security interest in all "future" and "hereafter acquired" assets, which allegedly includes the profits generated from this the J/SLIDES Mark.

Hilldun asserts that it made advances to Styleline New York based on the terms of the Agreement, with Hilldun receiving payments on the receivables it was assigned. (ECF No. 50 at 36.) It further states that the Factoring Agreement and Guranties by Defendant, Liu, and Mavridakis were ratified since all members regularly communicated with it and they knew that Hilldun was making advances and Styleline New York benefited from the same. (*Id.*)

Hilldun claims that Styleline defaulted under the Factoring Agreement and the outstanding balance of $5,662,468.60 is due to Hilldun. It further alleges that Styleline New York defaulted when:

- the J/SLIDES Mark was conveyed to Plaintiff,

- Styleline New York was dissolved and filed a state court action to enforce dissolution of the company,

- Plaintiff commenced this suit against Litvack, and

- This court's subsequent Temporary Restraining Order ("TRO") (discussed below) was instituted, thereby preventing Styleline New York from conducting business.[7]

(ECF No. 50 at 37-44.)

### Litvack's Response and Counterclaims to Plaintiff's Claims

In countering the allegations in the Complaint, Defendant Litvack claims that Plaintiff, Liu and Mavridakis all "sought to destroy the value of" Styleline New York by misappropriating

---

[7] In sum, Hilldun alleges that ownership of the J/SLIDES Mark is as follows:

- 2016: Owned by Plaintiff
- 2018: Transference to Styleline New York and attachment by Hilldun pursuant to Factoring Agreement since Hilldun perfected.
- 2022: Styleline New York reassigned back to Plaintiff but the reassignment did not include Hilldun's interests (*see* ECF No. 48 ¶ 65) (stating that per the 2022 Deed and accompanying documents, the parties agreed that the assignment of the J/SLIDES Mark to Plaintiff was subject to the "Encumbrance[s] … of Hilldun")
- 2022 to 2023: Business continued as usual between Styleline New York and Hilldun
- 2023-2024: Cease and desist letters and TRO prevent Styleline New York from doing business and inhibits Hilldun from getting repaid.

its customers, assets and goodwill.  (ECF No. 29 ¶ 72.)  These counter Defendants (Plaintiff, Liu and Mavridakis) all defamed Litvack to other people and entities with whom he did business. (*Id*. ¶ 73.)

Litvack blames the COVID-19 pandemic and Plaintiff's delivery of non-conforming goods—not Litvack's actions— as causing Styleline New York to fall behind on payments to Hilldun.  (ECF No. 29 ¶ 88.)  Litvack further asserts that Liu and Mavridakis failed to pay their personal financial obligations to the lender, Hilldun, which led to Styleline New York's eventual dissolution.  (*Id*. ¶ 89.)  Liu and Mavridakis also diverted goods from Plaintiff to companies they were affiliated with.[8]  (*Id*. ¶ 90.)  Liu and Mavridakis allegedly caused an attorney to send letters to Litvack and entities with whom Plaintiff did business on February 7, 2024 outlining his participation in "a massive counterfeiting operation in connection with J/SLIDES goods" on Styleline New York's behalf and demanding that he stop using the J/SLIDES Mark.  (*Id.* ¶¶ 92-94.)  These letters soiled his reputation.  (*Id.*)

### Hilldun's State Court Action Against Styleline New York

Hilldun sued Styleline New York, Liu, Mavridakis, Jay Litvack, and Lillian Litvack (Defendant Litvack's wife) in to enforce the Factoring Agreement's terms in New York Supreme Court in an action entitled, *Hilldun Corporation v. Styleline Studios LLC, Tina Ey-Vean Liu, Dimitri Mavridakis, Jay Litvack, and Lillian Litvack*, No. 652334/2024 (N.Y. Sup. Ct. May 6, 2024) ("State Court Action").  (ECF No. 50.)  Hilldun claims Styleline New York owes it approximately $6 million per the Agreement.  (*Id.* at 6-7.)  It further asserts that Plaintiff is

---

[8] For example, Hilldun claims that Plaintiff is doing business with several entities like BSS—an entity Liu controls— to replace Styleline New York as the supplier of shoes for Plaintiff.  (ECF No. 52 at 39-40.)

preventing Styleline New York from conducting any business while Plaintiff uses the J/SLIDES trademark to divert Styleline New York's customers away.  (*Id.* at 7.)

As a result, Hilldun seeks a money judgment against Styleline New York and the rest of those defendants as personal guarantors for breach of contract jointly and severally, and to authorize the public or private sale of the collateral for the debt owed to Hilldun.  (ECF No. 50 at 8-10.)

Notably, Hilldun states that Liu and Mavridakis claim they did not authorize the enforceability of the Factoring Agreement and did not execute a guaranty, as their signatures were forged.  (ECF No. 50 at 10.)  Thus, it requests that the members and Styleline New York still be found liable to Hilldun for unjust enrichment or quantum meruit even if the agreement and guaranties are unenforceable.  (*Id.*)

The causes of action in the State Court Action include:

1. Breach of contract against Styleline New York;
2. Account stated against Styleline New York pursuant to 5(a) of the Factoring Agreement;
3. Relief regarding the collateral against Styleline New York pursuant to Article 9 of the New York Uniform Commercial Code;
4. Replevin against Styleline New York;
5. Enforcement of the Joint Guaranty against Liu and Mavridakis;
6. Enforcement of the Guaranty against both Litvack defendants;
7. Enforcement of the pledge agreement and the account control agreement against Jay Litvack
8. Unjust enrichment/quantum meruit against the three Members and Styleline New York

(ECF No. 50 at 45-54.)

## PROCEDURAL BACKGROUND

Shortly after commencement of the action, Plaintiff filed an Order to Show Cause seeking a TRO and preliminary injunction in light of Defendant Litvack's refusal to cease and desist and persistence on using the J/SLIDES Mark at various trade shows despite Styleline New York's dissolution and Litvack's lack of authority to act.  (ECF No. 5.)  On February 16, 2024

the Hon. Orelia E. Merchant granted the TRO in favor of Plaintiff.  (ECF No. 8.)  In that TRO,

Defendant Litvack was, *inter alia*, temporarily restrained from making, selling, marketing any

footwear or goods using the J/SLIDES Mark or otherwise engaging in activity that would

infringe upon Plaintiff's rights with the Mark.  (*Id*.)  Defendant opposed claiming that Plaintiff

has not set forth the security sufficient for a TRO pursuant to Fed. R. Civ. P. 65(c) and that any

restraining order would prevent Defendant from continuing operations, causing financial harm,

including to commercial lender Hilldun who "is owed in excess of $5 million and holds a

perfected security interest in all [of Styleline New York's] merchandise, receivables and in the

J/SLIDES trademark." (ECF No. 10.)  Judge Merchant set a hearing for February 29, 2024.

(Electronic Order dated Feb. 29, 2024.)  At the hearing, the Court stated that the temporary

restraining order issued on February 16th would remain in effect but would not apply to

merchandise bearing the J/SLIDES Mark that Styleline New York purchased from Plaintiff and

to thousands of pairs of shoes that Styleline New York was authorized to sell.  (*Id.*)  In other

words, the TRO would *allow* Defendant to liquidate those shoes that Styleline New York

previously purchased from Plaintiff.  Further, no security or bond was imposed in connection

with the TRO.  (*Id.*)

On May 22, 2024, Hilldun first filed a letter declaring its intention to file a motion for

leave to intervene and file a motion for a preliminary injunction.  (ECF No. 27.)  The motion was

later filed on August 1, 2024 (ECF No. 46), with Plaintiff opposing on August 2, 2024.  (ECF

No. 51.)

## THE MOTIONS

### A.  *Hilldun's Motion to Intervene and for a Preliminary Injunction*

According to Hilldun, it has funded the three members' (Litvakc, Ey Vean Liu, and

Mavridakis) entire operation.  Hilldun is a "family-owned and operated business that provides

financing and factoring to companies in the fashion industry." (ECF No. 14 at 5.) Under a Factoring Agreement between Hilldun and Styleline New York, Hilldun agreed to "advance funds to [Styleline New York] against its future receivables" and Hilldun thereafter retrieved a security interest[9] in all of Styleline's "present and future assets including all trademarks." (*Id.* at 5-6.) In other words, Hilldun claims it has a perfected security interest in the J/SLIDES trademark that secures Styleline New York's debt to Hilldun. Litvack and the other two members also personally guaranteed their obligations. (*Id.* at 6.)

Once Styleline New York was in default of the Factoring Agreement because Plaintiff refused to continue to ship goods to Styleline New York, Hilldun commenced the State Court Action seeking more than $5 million and "possession of the collateral that secures this debt." (ECF No. 14 at 7.) Hilldun claims its rights to the trademark are superior to Plaintiff's given the terms of the Factoring Agreement.

Hilldun now moves for an Order to intervene and file its proposed Answer and Counterclaims "on the grounds that the requirements for both mandatory and permissive

---

[9] There are several steps under New York law to perfect a security interest. First, the security interest must be attached to the collateral. *Matter of Honeedew Investing LLC v. JP Morgan Chase Bank, N.A.,* 186 N.Y.S.3d 191, 192-93 (App. Div. 1st Dep't 2023) (citing N.Y. U.C.C. Law § 9-203(a). A security interest attaches to collateral when it becomes enforceable against the debtor, which occurs if value has been given, if the debtor has rights in the collateral and if the debtor has authenticated a security agreement that describes the collateral. *Id.* (citing N.Y. U.C.C. Law § 9-203(b)). The security agreement must be valid as a predicate for the following step. *Breest v. Haggis,* No. 155689/2023, 2023 N.Y. Misc. LEXIS 23243, at *11 (Sup. Ct. N.Y. Cnty. Dec. 19, 2023) (citing *McDaniel v. 162 Columbia Heights Hous. Corp.,* 21 Misc. 3d 244, 248, 863 N.Y.S.2d 346 (Sup. Ct. Kings Cnty. 2008)). The second step involves filing a financing statement. This statement must include the name of the debtor and the name of the secured party, and indicate the collateral covered by the financing statement. *Ring v. First Niagara Bank, N.A. (In re Sterling United, Inc.),* 674 F. App'x 19, 20-21 (2d Cir. 2016) (quoting N.Y. U.C.C. Law § 9-502). In order to perfect a security interest for a trademark, a filing must be made with the United States Patent and Trademark Office. *Lemonis v. A. Stein Meat Prods.,* 14-CV-3073(DLI) (RLM), 2015 U.S. Dist. LEXIS 27776, at *5 n.3 (E.D.N.Y. Mar. 6, 2015). Here, if the agreement between Hilldun and Styleline New York is deemed valid, Hilldun seemingly perfected its security interest around April 27, 2021 when it filed a new UCC-1 Financing Statement with the Secretary of State in New York which identified its interest in Styleline New York's present and future assets including its trademarks. (ECF No. 14 at 12).

intervention" have been met.  (ECF No. 46.)  It further requests an order in the form of a mandatory injunction directing (1) Plaintiff to pay into a segregated account maintained by a third-party escrow agent all J/SLIDES proceeds that are in Plaintiff's possession and to provide an accounting of all proceeds received on or after December 1, 2023; (2) Plaintiff to cooperate in any sale that Hilldun may conduct with regard to the J/SLIDES Mark and proceeds pursuant to the Factoring Agreement between Hilldun and Styleline New York; (3) enjoining Zany restrained parties from selling or transferring any portion of the J/SLIDES Mark and proceeds and commingling other monies or assets with the J/SLIDES proceeds, violating Hilldun's perfected security interest or interfering with its right to collect on Styleline New York's receivables or inventory, the J/SLIDES Mark, or any other collateral under the agreement; and (4) modifying the temporary restraining order entered against Litvack to allow Hilldun to sell inventory made by Universal International Max Limited.  (*Id*.)

Hilldun claims that even despite Plaintiff's notice of Hilldun's perfected security interest in the J/SLIDES Mark and proceeds, Plaintiff continues to violate or otherwise interfere with this right, namely by, *inter alia,* claiming that Plaintiff is the sole and exclusive owner and misappropriating J/SLIDES proceeds that belong to Hilldun.  (ECF No. 49 at 9.)

Therefore, Hilldun asserts it is entitled to intervene as of right or alternatively permissively; and that it is entitled to a preliminary injunction given its likelihood oof success on the merits, that it will suffer irreparable harm without an injunction, that the balance of equities tips in its favor and the public interest would be served in granting it injunctive relief.  (ECF No. 49.)

### B.  *Plaintiff's Opposition*

Plaintiff claims that Hilldun is not entitled to intervene either as of right or permissively since Hilldun neither has an interest in the property or transaction and the action will not impair

or impede its ability to bring claims since it already has the pending State Court Action regarding the same or similar claims. (ECF No. 51.) Plaintiff maintains that it is Plaintiff—not Hilldun—that owns the J/SLIDES Mark and is entitled to proceeds therefrom. (*Id*. at 8.) Nevertheless, Plaintiff asserts that Hilldun's proposed counterclaims are *entirely unrelated* to this trademark action against Litvack. (*Id*. at 6.) So long as Hilldun's action remains pending in New York, there is no determination that Hilldun has any claim to the J/SLIDES Mark so the instant motion is "premature and prejudicial to Plaintiff." (*Id*. at 7.)

Further, Plaintiff claims Hilldun is not entitled to a preliminary injunction because it has not demonstrated a likelihood of success on the merits or that it will suffer irreparable harm if a preliminary injunction is not issued, that the balance of equities tips in Plaintiff's favor, and the public interest would *not* be served by granting the relief Hilldun requests. (*Id*.)

### C. Hilldun's Reply

In addition to the claims made in its motion in reply, Hilldun maintains that Plaintiff fails to point to a provision in the 2018 Agreement or a provision of Hong Kong law—the laws under which Plaintiff was formed—that would negate its interest or that a breach by Styleline New York would negate Hilldun's interest under New York law. (ECF No. 53 at 11.) Further Hilldun argues that Plaintiff itself raises questions surrounding the validity of the Factoring Agreement in the Liu Declaration. (*Id*.)

In any event, the claims here and proposed by Hilldun are related in that Hilldun seeks to recover the *same* proceeds and rights in the J/SLIDES Mark that includes those sought by Plaintiff as well. (ECF No. 53 at 11-12.) Therefore, intervention will not unduly delay the case or prejudice the adjudication of the original parties' rights. (*Id*. at 13-14.) Hilldun however may be prejudiced if it cannot intervene in the only possible United States forum.

14

## DISCUSSION

### I.      Motion to Intervene: The Legal Framework

Pursuant to Federal Rule of Civil Procedure 24, a party may intervene in a civil case either as a matter of right or on a permissive basis.  *See* Fed. R. Civ. P. 24.  Intervention is appropriate as matter of right if the party seeking to intervene,

> [c]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

"To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), 'an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'"  *See Griffin v. Sheeran*, 767 F. App'x 129, 132 (2d Cir. 2019) (quotation omitted) (summary order).  Here, the only dispute surrounding this motion are elements two and three, namely, Hilldun's interest in the action and potential impairment.

Permissive intervention differs in that, pursuant to Fed. R. Civ. P. 24(b), the court has discretion to permit one to intervene who (a) "is given a conditional right to intervene by a federal statute" or (b) "has a claim or defense that shares with the main action a common question of law or fact."  *SEC v. Ripple Labs, Inc.,* 20 Civ. 10832 (AT), 2021 U.S. Dist. LEXIS 190855, at *6 (S.D.N.Y. Oct. 4, 2021) (citing Fed. R. Civ. P. 24(b)(1)).  "Claims or defense" requires only "some interest on the part of the applicant."  *Louis Berger Group, Inc. v. State Bank of India,* 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011).  Courts consider the same factors as on a motion to intervene as of right, but also consider "whether the intervention will unduly

delay or prejudice the adjudication of the original parties' rights." *Ripple Labs, Inc.,* 20 Civ. 10832 (AT), 2021 U.S. Dist. LEXIS 190855 at *6 (citing Fed. R. Civ. P. 24(b)(3)); *Flowers v. Webb,* 575 F. Supp. 1450, 1458 (E.D.N.Y. 1983) (same).

## II.   Intervention as of Right[10]
### a.   Interest Relating to the Property or Transaction

"For an interest to be cognizable under Fed. R. Civ. P. 24(a)(2), it must be direct, substantial, and legally protectable. Such an interest must be direct, as opposed to remote or contingent. An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Brennan v. NYC Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001).  Rule 24(a)(2) "does not require that an intervenor prove a property right, whether in the constitutional or any other sense;" rather what must be show is an *interest relating* to the property or transaction.  *Id.* at 130; *see also Continental Illinois Natl. Bank & Trust Co. V. Seltel Inc.*, No. 85 Civ. 3430-CSH, 1986 U.S. Dist. LEXIS 20527, at *6-7 (S.D.N.Y. Sept. 11, 1986) (stating that the interest in property or transaction under Rule 24(a)(2)  "must be significant, must be direct rather than contingent, and must be based on a right which belongs to the proposed intervenor rather than to an existing party to the suit").

Hilldun claims a right to intervene under Rule 24(a) since it claims an interest in the property that is the subject of this matter—the J/SLIDES Mark and proceeds in light of the agreement and Styleline New York's default which provides Hilldun with the right to exercise its

---

[10]Timeliness of the motion is not in dispute, and the undersigned finds it timely.  The motion is made timely since it has been filed before any answer was interposed in the matter.  *See EEOC v. Vamco Sheet Metals, Inc.,* 13 Civ. 6088 (JPO) (JCF), 2014 U.S. Dist. LEXIS 77436, at *7 (S.D.N.Y. Mar. 4, 2014) (finding the motion to intervene timely where the motion was filed four months after the complaint was filed and less than two weeks after the defendant filed an amended answer); *Olin Corp. v. Lamorak Ins. Co.,* 325 F.R.D. 85, 88 (S.D.N.Y. 2018) ("[C]ourts have found motions to intervene timely where, as here, these motions were brought a few months after the claims.") (internal quotations omitted).

remedies.  (ECF No. 49 at 13.)  Hilldun further claims that Plaintiff is interfering with its rights as a secured creditor by misappropriating the proceeds, depriving it of the ability to conduct an Article 9 sale of the J/SLIDES Mark and proceeds therefrom, and otherwise stealing customers and orders from Styleline New York and diverting them for their own business.  (*Id.* at 13-14.)

Plaintiff counters that Hilldun neither has an interest in the property nor the transaction since Hilldun is not the registered owner of the J/SLIDES Mark.  (ECF No. 51 at 12.)  Further, the New York court in the State Court Action has not yet determined whether Hilldun has an ownership right to the J/SLIDES Mark.  (*Id.*)  Indeed, Plaintiff argues that it is the owner due to a transfer in 2018 of the Mark to Plaintiff, making it the owner of the Mark even when it was allegedly pledged to Hilldun by Styleline New York.  (*Id*. at 13.)  Plaintiff contends the J/SLIDES Mark was never transferred to Styleline New York since the 2018 transfer was conditioned on payments to Plaintiff, which were never made.

Here, despite Plaintiff's assertions, Hilldun does have an interest in the J/SLIDES Mark and proceeds given the monies it has injected into Styleline New York in exchange for Styleline New York's receivables per the Factoring Agreement.  Hilldun perfected its security interest, further demonstrating its purported entitlement to the Mark and proceeds.  Courts have found proposed intervenors in similar circumstances to have an interest in the property or transaction. *See Parris v. Fremont Inv. & Loan*, No 14-cv-06907 (KAM) (RER), 2017 U.S. Dist. LEXIS 142279, at *4,7 (E.D.N.Y. Aug. 31, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 186601 (Nov. 6, 2017) ("Courts in this district have consistently found that [a]n owner of property underlying an action has a direct interest in the action for Rule 24(a) purposes.") (internal citations omitted); *United States CFTC v. Effosman*, 05 Civ 8422 (KMW), 2010 U.S. Dist. LEXIS 146285, at *10-11 (S.D.N.Y. Jan. 11, 2010) (suggesting that an investment into a

fraud scheme would result in an interest in the case sufficient for intervention); *John v. Sotheby's*, 141 F.R.D. 29, 35 (S.D.N.Y. 1992) (finding that proposed intervenor's claim of ownership in the painting "satisfied the requirement that he have a direct and protectable interest in the action").  Thus, Hilldun has demonstrated at least an interest relating to the property at issue here.

### b.  Impair or Impede or Lack Thereof Because of the State Court Action

The State Court Action involves issues related to Styleline New York and its members' breach of the Factoring Agreement.  (ECF No. 51 at 6.)  Plaintiff argues that this action will not affect Hilldun's proposed claims nor the remedies it requests.  (*Id*.)  A finding against Litvack in this case will *not* inhibit Hilldun from filing a later action against Plaintiff (or even include Plaintiff in the State Court Action) regarding the interest in the J/SLIDES Mark if "and only if" it succeeds in its claims against Styleline New York and its members in the New York court action. (*Id*. at 16.)

Courts have found that where there is an underlying existing case for the proposed intervenor, like Hilldun has here, to exercise and protect its interest, a motion to intervene as of right should be denied—that is, if the proposed intervenor has another avenue to obtain a remedy, then it cannot intervene: *Creative Care, Inc. v. Perales*, 89 C 1079, 1992 U.S. Dist. LEXIS 5947, at *4-5 (E.D.N.Y. Mar. 6, 1992) ("Because Tiffany can protect its interests in the pending state court action, it may not intervene as of right in this action under Rule 24(a). Nor would the court permit intervention under Rule 24(b). The parties should resolve all issues in the pending action in the Supreme Court of the State of New York."); *2505 6th St., LLC v. Westguard Ins. Co*., No. 21-cv-1673-WJM-KMT, 2021 U.S. Dist. LEXIS 226527, at *6-7 (D. Colo. Nov. 24, 2021) ("Additionally, the Clays can adequately pursue their claims in state court. Therefore, the Clays' interest will not be impaired or impeded by the disposition of this case.");

*cf. JMA Energy Co., L.L.C. v. BJ Servs. Co. U.S.A.*, No. CIV-08-738-M, 2009 U.S. Dist. LEXIS 54318, at *7 (W.D. Okla. June 26, 2009) ("If Plaintiff-Intervenors do not intervene in this action, in order to seek redress for the damages allegedly caused by Defendant, Plaintiff-Intervenors will have to institute a separate suit in state court."); *Lopez v. Eventbrite, Inc*., 1:24-cv-1544-GHW, 2024 U.S. Dist. LEXIS 104484, at *2, 10-11 (S.D.N.Y. June 12, 2024) (granting motion to intervene as of right in trademark infringement case where the City-proposed intervenor was asserting ownership rights in the *same* trademark and its inability to participate in this litigation to claim ownership rights would be impaired despite having an open court case also on trademark infringement); *Parris,* 2017 U.S. Dist. LEXIS 142279 at *4,7 (noting that the state court found the proposed intervenor to have standing as the holder of the note and mortgage and that its failure to intervene in this case would impact its property rights and the ongoing state court litigation).  Consequently, the existence of Hilldun's State Court Action demonstrates that its interests would *not* be impaired if the motion to intervene were denied.

Moreover, Hilldun's State Court Action is likely to address key issues, including whether the Factoring Agreement was validly executed (or whether Liu's and Mavridakis's signatures were forged) and then whether Hilldun has an interest in the J/SLIDES Mark and proceeds. Indeed, Hilldun acknowledges issues surrounding the validity of the Factoring Agreement and personal guaranty agreements, as it requests that Defendant, Liu, Mavridakis, and Styleline New York still be found liable to Hilldun for unjust enrichment or quantum meruit even if the agreement and guaranties are unenforceable.[11]  (ECF No. 50 at 10.)  Intervention could indeed risk inconsistent rulings between this and the State Court Action.

---

[11] At bottom, the Court notes that Hilldun has colorable arguments to undermine Liu's and Mavridakis's claims that the Factoring Agreement and guaranties are not legitimate, pointing to communications between all three of them.  (ECF No. 50 at 36.)  Still, this issue is not properly before this Court.

### III.    Permissive Intervention

As for permissive intervention, Hilldun contends that the proposed counterclaims and Complaint share common questions of law and fact—namely what party has superior interests in the J/SLIDES Mark and proceeds.  (ECF No. 49 at 10-11, 15.)  Hilldun also claims no prejudice will ensue upon any party since the motion to intervene is brought early and its joining would "reduc[e] the possibility of inconsistent results."  (*Id*. at 15.)

Plaintiff, on the other hand, contends that the questions of law and fact are different and separate from those in this case versus those lodged by Hilldun.  (ECF No. 51.)  Instead, Hilldun's proposed counterclaims would *expand* the scope of this action by adding additional claims and "introduce collateral issues…beyond [the] pleadings" and delay the adjudication of the instant case against Litvack.  (*Id*. at 18.)

A movant seeking permissive intervention must demonstrate that it "has a claim or defense that shares with the main action a common question of law or fact."  *BNP Paribas v. Kurt Orban Partners LLC*, 19 Civ. 9616 (ALC) (SLC), 2021 U.S. Dist. LEXIS 19938, at *9 (S.D.N.Y. Feb. 2, 2021) (citing Fed. R. Civ. P. 24(b)(1)(B)).  "Claim" or "defense" for permissive intervention purposes only requires establishing some interest on the movant's part.  *Id*.  "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes, Inc*., 25 F.3d 66, 73 (2d Cir. 1994) (quoting Fed. R. Civ. P. 24(b)(2)). Here, allowing Hilldun to intervene under Rule 24(b) would effectively expand the causes of action in this case to include a breach of contract claim running from Hilldun to non-party Styleline New York.  The facts surrounding this case also differ from those Hilldun alleges. Plaintiff here seeks to prevent Litvack, a member of Styleline New York, from continuing to infringe upon the J/SLIDES trademark.  Litvack was directed not to use the Mark when it was

revealed to Plaintiff that he was engaging in unauthorized company acts.  However, Hilldun

seeks to hold non-party Styleline New York liable for breaching their Factoring Agreement and

subsequently retrieving the monies it owes Hilldun.  That action concerning enforcement of an

agreement's terms has no clear bearing, at this juncture, on the outcome of this case concerning a

company owner's misuse of a trademark.  The circumstances here weigh against granting

permissive intervention.  *See Liz Claiborne v. Mademoiselle Knitwear*, 96 Civ. 2064 (RWS),

1996 U.S. Dist. LEXIS 8847 (S.D.N.Y. June 23, 1996) (denying permissive intervention, in part,

because the proposed intervenor and plaintiff's claims were distinct since "Claiborne's action

revolve[d] around trademark infringement and violation of its contract with Mademoiselle [and

the proposed intervenor] is asserting a separate contract claim."); *cf. Jones v. Stanford*, 525 F.

Supp. 3d 420, 423 (E.D.N.Y. 2021) (denying permissive intervention on other grounds but

noting that the proposed intervenor's complaint "share[d] common questions of law and fact

with the Amended Complaint" and there was "NO expansion of the causes of action raised in the

original complaint" and "any relief granted in the ongoing case w[ould] also apply to" the

proposed intervenor); *Tommy Hilfiger Licensing v. Tee's Ave*., 95 Civ. 9358 (DAB), 1996 U.S.

Dist. LEXIS 10004, at *5-6 (S.D.N.Y. July 16, 1996) (granting permissive intervention where

(1) both the original complaint and intervenor's complaint would involve determining whether

defendants infringed on plaintiffs' trademarks so a common question existed; (2) there would be

no negative impact, such as undue delay or prejudice, in allowing the intervenor into the case;

and (3) intervention should be allowed because if denied, the intervenor would file suit at the end

of the trial which could delay ultimate adjudication of the claims); *Arista Records, Inc. v. Dalaba

Color Copy Ctr., Inc*., CV 05-3634 (DLI)(MDG), 2006 U.S. Dist. LEXIS 101469, at *13-14

(E.D.N.Y. Aug. 18, 2006) (granting intervention where intervention would "not radically change

the nature of the case" because it did not seek to "interject new or collateral issues which would in any way alter the landscape of the case"; rather it sought to reclaim items that plaintiffs seized); *James Music Publ'g Co. v. Roc a Fella Records, LLC*, 05 Civ. 9922 (BSJ) (JCF), 2007 U.S. Dist. LEXIS 26679, at \*6-7 (S.D.N.Y. Apr. 12, 2007) (finding common questions of law sufficient to grant permissive intervention because the proposed intervenor raised the *same* copyright infringement claims against the defendant as plaintiffs and would thus be affected if the copyright was found to be belong to plaintiffs alone).  For these reasons, the Court should decline to exercise its discretion in permitting intervention here.

Because the undersigned recommends denying the motion to intervene both as of right and permissively, Hilldun cannot seek a provisional remedy such as a preliminary injunction, and its request should likewise be summarily denied.  *See e.g., Chen v. New Trend Apparel, Inc.,* 11 Civ. 324 (GBD)(MHD), 2014 U.S. Dist. LEXIS 109750, at \*3 (S.D.N.Y. Aug. 6, 2014), *report and recommendation adopted,* 2014 U.S. Dist. LEXIS 136499 (Sept. 23, 2014) (denying motion to intervene on jurisdictional grounds and finding that "[s]ince intervention is not legally feasible, it follows that the application by [the proposed intervenor] for a preliminary injunction must also be denied); *New Falls Corp. v. Soni Holdings, LLC,* 19-CV-00449 (HG) (LGD), 2023 U.S. Dist. LEXIS 207122, at \*6 (E.D.N.Y. Nov. 18, 2023) (denying the motion to intervene and declining to consider the proposed modification to the preliminary injunction).  However, if Judge Merchant disagrees with the above and determines Hilldun has met or otherwise satisfied the requirements of Rule 24 for intervention, the undersigned next considers the application for a preliminary injunction below.

## IV.    Motion for a Preliminary Injunction

Hilldun avers that the preliminary injunction motion should be granted because Hilldun can succeed on the merits since it holds a *perfected* security interest in the J/SLIDES Mark and

proceeds; Plaintiff has misappropriated proceeds that Hilldun is entitled to and interferes with its rights; and the balance of hardships types in its favor because Plaintiff obtained its assignment *subject* to Hilldun's security interest.  (ECF No. 49 at 11.)

### a.  Legal Standard

Preliminary injunctions are governed by Fed. R. Civ. P. 65.  A court may grant a preliminary injunction if the "plaintiff has shown (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [the plaintiff's] favor; and (4) that an injunction is in the public interest."  *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 670 F. App'x 6, 8 (2d Cir. 2016) (quotes omitted).

This Circuit also applies the "serious question" standard.  "The serious questions standard permits a district court to grant a preliminary injunction ... where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction."  *Spanski Enterprises, Inc. v. Telewizja Polska S.A.*, 832 F. App'x 723, 724 (2d Cir. 2020) (quotes omitted); *see Gov't Emps. Ins. Co. v. Relief Med., P.C.,* No. 20-CV-2165 (MKB), 2021 WL 3565739, at *9 (E.D.N.Y. Aug. 12, 2021).  Accordingly, a movant must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)) (emphasis added).

Typically, preliminary injunctions are prohibitory—that is, they seek to maintain the status quo until the matter is adjudicated.  *IBM Corp. v. Johnson*, 629 F. Supp. 2d 321, 328 n.7 (S.D.N.Y. 2009).  However, where the preliminary injunction motion seeks affirmative relief by

directing someone to do something thereby disrupting the status quo, the motion is considered a mandatory injunction. "A heightened standard applies" to mandatory injunctions and should only be issued if the movant shows "a clear or substantial likelihood of success on the merits" or "where extreme or very serious damage will result" if the motion is denied. *Jordan v. Metro. Life Ins. Co*., 280 F. Supp. 2d 104, 108 (S.D.N.Y. 2003) (internal citations omitted); *Laurus Master Fund, Ltd. v. Valcom, Inc.*, 02 Civ. 1480 (WK), 2002 U.S. Dist. 4631, at *6 (S.D.N.Y. Mar. 18, 2002); *see also IBM Corp*., 629 F. Supp. 2d at 328 (stating that a mandatory injunction involves a "more burdensome test").

Given that Hilldun seeks to alter the status quo here by having the J/SLIDES Mark and proceeds essentially change hands before trial on the merits, the motion is deemed a mandatory injunction and Hilldun must overcome the higher standard. The Court addresses Hilldun's request below.

### b. Application
#### i. Irreparable Harm

Hilldun claims that without a preliminary injunction, it will be deprived of the right to use the J/SLIDES Mark and proceeds and foreclose on the collateral and collect the monies owed. (ECF No. 49 at 28.) Absent an injunction Plaintiff might commingle the J/SLIDES proceeds or sell the Mark to another entity which constitute actual and imminent injuries. (*Id*.) These injuries are not speculative as Plaintiff has already stolen customers and orders from Styleline New York. (*Id*.) Further, Styleline New York is also dissolved which "increas[es] the likelihood that Styleline New York will be unable to satisfy any of its debt to Hilldun." (*Id*. at 28-29.) And Plaintiff is located in Hong Kong, making it difficult for Hilldun to secure an injunction against Plaintiff otherwise. (*Id*. at 29.)

24

A similar situation was raised in *Rheaume v. Pallito*, No. 11-cv-72, 2012 U.S. Dist. LEXIS 31903, at *3 (D. Vt. Mar. 8, 2012) where the court stated:

> Plaintiff Rheaume is litigating the same claims he brings here in a pending state court action. This underscores the conclusion that Plaintiff Rheaume will not suffer irreparable harm if his request for an "extraordinary remedy" is denied by this court as he is actively pursuing his remedies elsewhere. The court thus agrees with the Magistrate Judge that Plaintiff Rheaume has failed to establish his entitlement to preliminary injunctive and declaratory relief.

Here, again and like the court stated in *Rheaume* Plaintiff reiterates that Hilldun seeks to bring breach of contract claims to this trademark infringement action.  (ECF No. 51.)  Hilldun may still take action via monetary damages and would not suffer irreparable harm here.  (*Id*. at 20.)  Indeed, numerous courts in this Circuit have stated that monetary damages are insufficient to demonstrate irreparable harm.  *See Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 404 (2d Cir. 2004) ("If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief."); *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (stating that an injury under the irreparable harm element constitute those that "cannot be remedied by an award of monetary damages"); *Kebapci v. Tune Core, Inc*., 15-cv-7141 (ENV)(ST) , 2016 U.S. Dist. LEXIS 159054, at *7 (E.D.N.Y. Nov. 11, 2016) (stating that a "cardinal rule of irreparable harm" is that "an injury is not irreparable if a monetary award can provide adequate compensation"); *Baliga v. Link Motion Inc*., 18 Civ. 11642 (VM) , 2022 U.S. Dist. LEXIS 153203, at *16 (S.D.N.Y. Aug. 25, 2022) ("Irreparable injury is one that cannot be redressed through a monetary award.").

Additionally, Plaintiff also wants to preserve the J/SLIDES Mark—that is precisely what this action is about—so Plaintiff would not "damage" Hilldun's claimed ownership in the J/SLIDES Mark or proceeds as Hilldun maintains.  (*Id*. at 20-21.)  Accordingly, Hilldun has not demonstrated irreparable harm here.

### ii. Likelihood of Success on the Merits

Hilldun asserts the following counterclaims against Plaintiff: declaratory judgment, relief under N.Y. UCC §§ 9-315 and 9-607(a)(2), injunction, tortious interference with contract and contractual relationships, accounting, constructive trust, voidable transfers under the New York Debtor & Creditor Law, and unjust enrichment.  (ECF No. 49 at 16.)

Hilldun points to the first three counterclaims stating these are all that is needed to determine its likelihood of success on the merits:

- Hilldun seeks declaratory judgment, namely that Hilldun holds a perfected security interest in the J/SLIDES Mark and proceeds superior to Plaintiff's interest in the same and thus has the right to conduct a sale and otherwise collect, monetize and liquidate Styleline New York's receivables assigned to Hilldun or those in which Styleline holds a security interest (ECF No. 49 at 17);

- Hilldun claims it has the right to possess any present and future proceeds Plaintiff holds (*id.*); and

- Hilldun seeks an injunction ordering Plaintiff to cooperate in and recognize any sale of the J/SLIDES Mark and proceeds pursuant to the Agreement or N.Y. U.C.C. and to otherwise comply with the N.Y. U.C.C. by paying to an escrow agent or maintain a segregated account for the J/SLIDES proceeds and preventing the restrained parties from selling or transferring the Mark and proceeds, commingling the proceeds, and interfering with Hilldun's attempts to exercise its rights under the Agreement or U.C.C.  (*id.* at 17-18.)

In order to succeed on its claims, Hilldun must demonstrate it has a security interest in the J/SLIDES Mark that allows it to sell the collateral at a sale under Article 9 and is entitled to proceeds of the Mark.  Hilldun accordingly claims it has established that it

- Obtained a security interest in the J/SLIDES Mark and proceeds under the agreement whereby Styleline New York agreed to assign and sell receivables to Hilldun and Hilldun would in turn provide advances and financial accommodations to Styleline New York; and Styleline granted Hilldun a security interest and lien on all present and future assets of Styleline New York's to secure its obligations to Hilldun, which included the trademark and proceeds for J/SLIDES at issue here (ECF No. 49 at 19-21);

- Perfected its security interests by filing the UCC-1 financing statements with the Department of State as required in 2016 and again in 2021(*id*. at 24);

- Plaintiff took the J/SLIDES Mark subject to Hilldun's security interest to which Plaintiff, Liu, and Mavridakis had actual and constructive notice (*id*. at 25-26); and

- Styleline New York defaulted under the Factoring Agreement when it failed to pay Hilldun so Hilldun is now entitled to conduct a sale of the J/SLIDES Mark and proceeds and possess the proceeds and use the Mark to collect the receivable and liquidate any other collateral (id. at 27).

Plaintiff however avers that the other Styleline New York members, Mavridakis and Liu, deny that Litvack had authorization to sign the agreement on the company's behalf which calls its validity into question.  (ECF No. 51 at 19.)  And the 2018 deed which allegedly assigned the J/SLIDES Mark from Plaintiff to Styleline New York is also questionable.  (*Id*.)  Styleline New York did not own the Mark when it was "pledged to Hilldun" and the 2018 Deed was additionally controlled by Hong Kong law and conditioned on payment to Plaintiff to pass to Styleline New York.  (*Id*. at 19-20.)

The validity of the underlying agreement calls into question whether Hilldun will succeed on the merits and thus provides good reason to deny the motion for a preliminary injunction.  *See Robbins v. Comprehensive Medical Management, Inc*., No. 3:00cv57 PCD, 2000 WL 502693, at *2 (D. Conn. Mar. 21, 2000) ("Even if there were an action pending, CMMI could not establish a likelihood of success on the merits or a serious question as to the merits with the balance of hardships tipping decidedly in its favor. Plaintiffs raise several significant questions as to the enforceability of the noncompete clauses…."); *DAG Jewish Directories, Inc. v. Y & R Media, LLC*, No. 09 Civ. 7802(RJH), 2010 WL 46016, at *2-3 (S.D.N.Y. Jan. 7, 2010) ("Plaintiff has not demonstrated a likelihood of success on the merits. To the contrary, plaintiff will face great difficulty proving the validity of the contract with Hayoun. Plaintiff has been unable to produce anyone with personal knowledge of his signing the contract…For the foregoing reasons,

plaintiff's motion for a preliminary injunction with respect to its restrictive covenant claims against defendant Hayoun is DENIED."); *Transperfect Translations Intern., Inc. v. Merrill Corp.*, 03 Civ. 10146 (LAP), 2004 U.S. Dist. LEXIS 24014, at \*18 (S.D.N.Y. Nov. 29, 2004) ("Having already determined, in analyzing the motion for judgment on the pleadings, that the Confidentiality Agreement is not a valid, enforceable contract, I need not engage in any further analysis of the merits of this claim. TransPerfect has not shown a likelihood of success on the merits on its breach of contract claim.").  Indeed, here, a court must first determine whether the agreement is enforceable *before* determining whether Hilldun has a valid interest in the property at issue.  *See Breest v. Haggis*, No. 155689/2023, 2023 N.Y. Misc. LEXIS 23243, at \*11 (Sup. Ct. N.Y. Cnty. Dec. 19, 2023) (stating that a valid security agreement is a predicate for the creation of a security interest).  That issue appears to be presently and correctly before the state court in the State Court Action.  Given that the critical question regarding the agreement's viability, it is not likely, at this juncture, that Hilldun will succeed on the merits of its claim.

### iii.  Balance of Equities and Harm to the Public Interest

Hilldun again reiterates the hardships it would face if the preliminary injunction is not granted—*i.e,* deprivation of rights in the J/SLIDES Mark and proceeds.  (ECF No. 49 at 30.) Plaintiff however argues that resolution in this action would not acts the merits or remedies available to Hilldun that it is indeed already pursuing in the New York action. (ECF No. 51 at 21.)

Balancing the equities requires looking to looking to the plaintiff's hardships and benefits if the preliminary injunction motion is granted as well as the relative hardship to the defendant. *Antonyuk v. Bruen,* 624 F. Supp. 3d 210, 224-25 (N.D.N.Y. Aug. 31, 2022).  As emphasized above, there would be no hardship upon the movant given its potential relief in the State Court

Action.  Further, this case may result in a protracted litigation if the Court were to grant Hilldun's requests.

Regarding the public interest harm, Hilldun claims the public interest would be served since the public has an interest in "seeing that parties oblige by their contractual obligations" and not have parties flout their obligations as Plaintiff does here given Hilldun's duly perfected security interest.  (ECF No. 49 at 30.)  Plaintiff counters that this is a narrow trademark infringement action—not one that involves public interest or even a breach of contract.  (ECF No. 51.)  Regardless trademark actions are restricted to the interests of the trademark owner.  (*Id*. at 22.)

Plaintiff, however, is incorrect in that *both* for trademark infringement cases and breach of contract cases, there is no harm to the public interest in granting such a preliminary injunction. For trademark infringement cases, courts tend to focus on whether "[t]he consuming public has a protectable interest in being free from confusion, deception and mistake.'" *Bravo Pizza Enters. v. Azizo*, 23-CV-04540 (HG), 2023 U.S. Dist. LEXIS 152478, at *19 (E.D.N.Y. Aug. 29, 2023) (quoting *3M Co. v. CovCare, Inc*., 537 F. Supp. 3d 385, 406 (E.D.N.Y. 2021)); *see also PowX Inc. v. Performance Sols*., 24-CV-01389 (MMG), 2024 U.S. Dist. LEXIS 107208, at *46-47 (S.D.N.Y. June 14, 2024) (finding that a public interest counseled in favor of granting an injunction where there was a likelihood of success on the claims of patent infringement and "it [wa]s not in the public interest to allow the public to have access to 'product options' that infringe[d] on valid patents" and there exists "a strong public interest in ensuring that valid patents are enforced"); *City of New York v. Lopez*, 21 CV 7862 (JPO), 2021 U.S. Dist. LEXIS 243449, at *11-12 (S.D.N.Y. Dec. 21, 2021) (entering injunction where there existed "a strong interest in preventing consumer confusion[, deception,] and protecting federally registered

trademarks" and concluding that "the public interest would not be disserved by the issuance of a preliminary injunction").

Similarly, in breach of contract cases there is a public interest in enforcing valid contracts. *See Brook Bev., Inc. v. Pepsi-Cola Bottling Co. of N.Y.*, 20-CV-9275 (VSB), 2021 U.S. Dist. LEXIS 28558, at *22 (S.D.N.Y. Feb. 16, 2021) ("There is no indication that issuing a preliminary injunction in this case would harm the public interest. If anything, the public interest weighs in favor of ensuring that Defendant does not terminate or breach the valid Agreement.") (citing *General Mills, Inc. v. Champion Petfoods USA, Inc*., No. 20-CV-181 (KMK), 2020 WL 915824, at *12 (S.D.N.Y. Feb. 26, 2020) ("Courts routinely hold there is undoubtedly a public interest in enforcing valid contracts."); *Nimbus Therapeutics, LLC v. Celgene Corp*., 570 F. Supp. 3d 100, 127 (S.D.N.Y. 2021) ("The final requirement is that issuance of the preliminary injunction would be in the public interest…First, there is a well-recognized public interest in enforcing contracts and upholding the rule of law. This is particularly true where, as here, the contract involves sophisticated counterparties who engaged in actual negotiation over the provisions at issue.") (internal citations omitted) (cleaned up); *see also Lightbox Ventures, LLC v. 3rd Home Ltd*., 16cv2379(DLC), 2016 U.S. Dist. LEXIS 155822, at *36 (S.D.N.Y. Oct. 28, 2016) ("There is a well-recognized public interest in enforcing contracts."). Still in light of Hilldun's failure to establish irreparable harm and its likelihood of success on the merits of its claim, the Court should decline to grant the motion for a preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, the undersigned recommends denial of Hilldun's motion to intervene and motion for a preliminary injunction.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  September 19, 2024

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge